**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN RE PRESS COALITION'S MOTION FOR ACCESS TO VIDEO EXHIBITS AND TO SET ASIDE STANDING ORDER NO. 21-28 | Case No. | Case: 1:21–mc–00085<br>Assigned To : Cooper, Christopher R.<br>Assign. Date : 6/7/2021<br>Description: Misc.<br><br>Oral Argument Requested |

**MOTION FOR ACCESS TO VIDEO EXHIBITS**
**AND TO SET ASIDE STANDING ORDER NO. 21-28**

Pursuant to Local Criminal Rule 57.6, Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post (together, the "Press Coalition") respectfully move this Court for an order releasing certain video recordings (the "Video Exhibits") submitted to the Court in *United States v. Daniel Dean Egtvedt*, Case No. 21-cr-177-CRC-1.  The Press Coalition further requests that the Court set aside Standing Order No. 21-28 (BAH) (May 14, 2021), which unduly restricts public access to the Video Exhibits.

The Press Coalition's interest in this matter, a statement of the relevant facts, and a specific prayer for relief are each set forth in the accompanying Memorandum of Points and Authorities.

**REQUEST FOR HEARING**

The Press Coalition respectfully requests a hearing on this Motion.

Dated:  June 7, 2021          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE PRESS COALITION'S MOTION FOR ACCESS TO VIDEO EXHIBITS AND TO SET ASIDE STANDING ORDER NO. 21-28 | Case No.<br><br>Oral Argument Requested |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ACCESS TO VIDEO EXHIBITS AND TO SET ASIDE STANDING ORDER NO. 21-28**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*

## PRELIMINARY STATEMENT

No American can reasonably dispute the recent observation of the Court of Appeals for the District of Columbia Circuit: "[T]he violent breach of the Capitol on January 6 was a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The public's interest in the administration of justice has never been greater than it is with the criminal cases arising out of this dangerous threat to the peaceful transfer of authority. To reinforce the public's confidence in the stability of our government, the courts must ensure maximum public transparency for the unprecedented prosecutions in the Capitol Cases.

In this motion, Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post (together, the "Press Coalition") seek to advance the public interest by obtaining videos that the Government submitted to this Court in Case No. 21-cr-177-CRC-1 as evidence that Defendant Daniel Dean Egtvedt should remain in detention pending trial. These videos (the "Video Exhibits") are judicial records to which the public has a right of access under both the First Amendment and common law. The Court should release them, without restriction, immediately.

Moreover, to fully vindicate the public's right of access, the Court also should set aside Standing Order No. 21-28 (BAH) (May 14, 2021) (the "Standing Order"), which unduly restricts transparency in this proceeding. While intended to facilitate access to the Video Exhibits, the Standing Order actually limits access here in three ways: (1) by default, it contravenes the

1

longstanding presumption of openness by permitting the Government to delay disclosure for three days after any order to release videos; (2) it provides access to Video Exhibits only to "credentialed" members of the press, and not the public; and (3) it presumptively restricts republication of lawfully-obtained Video Exhibits without a finding that such a restriction furthers a state interest of the highest order.

The need for contemporaneous, comprehensive access to the record of these prosecutions is even clearer now, as bipartisan efforts to establish an independent commission to investigate the Capitol riot have stalled in Congress. *See* Ryan Nobles et al., *Senate Republicans block January 6 commission*, CNN (May 28, 2021), https://www.cnn.com/2021/05/28/politics/january-6-commission-vote-senate/index.html. With the Legislative Branch deadlocked, and the Executive Branch already responsible for prosecuting the Capitol Cases, the Judicial Branch alone can offer the public an objective inquiry into the events of January 6. This Court should therefore ensure that these proceedings are as transparent as the Constitution and the common law require. The Court should make the Video Exhibits available to the public immediately and without restrictions on their republication.

## BACKGROUND

### I.     The Riot At The United States Capitol

On January 6, 2021, thousands of rioters operating under "the guise of First Amendment-protected activity" stormed the United States Capitol in a "blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process." *See Director Wray's Statement on Violent Activity at the U.S. Capitol Building*, FBI (Jan. 7, 2021), https://www.fbi.gov/news/pressrel/press-releases/director-wrays-statement-on-violent-activity-at-the-us-capitol-building-010721. In response, federal law enforcement agencies "deployed [their] full investigative resources . . . to aggressively pursue those involved in criminal activity."

*Id.*  The Department of Justice has since charged more than 400 individuals, including the

Defendant in this case, with crimes committed during the Capitol riot.  *See, e.g.*, *Capitol Breach*

*Cases*, Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases.

According to the Department of Justice, "[t]he investigation and prosecution of the

Capitol Attack will likely be one of the largest in American history, both in terms of the number

of defendants prosecuted and the nature and volume of the evidence."  Mot. to Continue and

Exclude Time at 1, *U.S. v. Caldwell*, No. 21-cr-28 (D.D.C. Mar. 12, 2021), Dkt. 73.  Among that

evidence is "more than 15,000 hours of surveillance and body-worn camera footage from

multiple law enforcement agencies," *id.* at 2, including the Video Exhibits at issue in this motion.

### A.      This Case

On February 9, 2021, the Government charged Egtvedt with multiple federal crimes in

connection with his alleged activities at the Capitol on January 6, including assault on a federal

officer and obstruction of law enforcement during civil disorder.  *See* Crim. Compl., Dkt. 1.  The

Government has claimed that Defendant's breaking into the Capitol "occurred amidst some of

the most dangerous, and indeed, deadliest, moments of January 6, 2021," and that it "blatantly

disregarded at least three separate directives, from different officers, to exit the U.S. Capitol."

Gov't Mot. for Pretrial Detention, Dkt. 6 at 12.  Defendant also allegedly attacked a U.S. Capitol

Police Officer in the building, was not deterred by three other officers attempting to restrain him

from assaulting her, and attempted to re-enter the building after being forcibly removed.  *Id.*

Because of the nature of the charges against Defendant, the Government moved for the

Defendant to be detained pending trial.  On February 25, 2021, after a hearing on the matter,

Magistrate Judge G. Michael Harvey granted this request.  *See* Order of Detention Pending Trial,

Dkt. 7.  At Defendant's request, Judge Christopher R. Cooper revoked this Order and ordered

Defendant released to a high-intensity supervision program.  *See* Order, Dkt. 23.  The

Government has since moved twice to revoke Defendant's pretrial release due to concerns about the technical difficulties with the equipment intended to monitor his location. *See* Dkt. 27,

### B.    The Video Exhibits

In its motion requesting that the Court deny Defendant release on bail or bond, the Government argued that video evidence, which included "law enforcement body worn cameras ('BWC'), and well as the defendant's own words expressed through social media and interviews that he provided to fellow rioters" is "objective and unwavering." Dkt. 6 at 18. Magistrate Judge Harvey cited that evidence in granting the Government's motion. *See* Order of Detention Pending Trial at 3-4, Dkt. 7 (referring, *inter alia*, to "body-worn camera footage of Defendant engaging in assaultive conduct inside the Capitol"). Defendant then moved to revoke that order, and at a hearing before Judge Cooper on April 14, 2021, the Government played several videos, pausing throughout to explain key moments. *See* Apr. 14, 2021 Hr'g. Tr. at 43:5-64:1. Judge Cooper noted that he had "viewed all the videos" and that they were "the key consideration" in his decision, which was ultimately to release Defendant. *Id.* at 74:19-78:23.

### II.    The Standing Order

This is not the Press Coalition's first effort to increase public access to the Capitol Cases. On March 24, 2021, the Press Coalition moved for access to videos that had been shown in open court and submitted as exhibits in support of detaining defendant George Tanios before trial. *See* Mot. for Access, *In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-34-TFH (D.D.C. Mar. 24, 2021) (seeking access to videos in *U.S. v. Tanios*, No. 21-cr-222-TFH-2). The Government initially opposed releasing those videos, only to agree to produce them shortly before a hearing was set to be held on the access motion. *See, e.g.*, Katelyn Polantz, *Justice Department releases video of attack on Capitol Police officer*, CNN (Apr. 28, 2021), https://www.cnn.com/2021/04/28/politics/brian-sicknick-capitol-riot-videos/index.html.  Videos

first shown in open court on March 22 were finally released on April 28, more than a month after the prosecution, defense counsel and the court viewed them in a public court proceeding.  In finally releasing these videos, the Government did not seek, and the court did not impose, any restrictions on the news media in sharing those videos with the public.

Subsequently, in an attempt to expedite disclosures of these court records moving forward, the Press Coalition wrote to Chief Judge Beryl A. Howell to request entry of a Standing Order directing the Government to proactively release all unsealed video exhibits in the Capitol Cases to a representative member of the press.  The press then would have been responsible for distributing the videos to other news organizations and making them accessible to the public. *See* Mot. to Access Video Exhibits, *In re Press & Public Access to Video Exhibits in the Capitol Riot Cases*, No. 21-mc-46-BAH (D.D.C. May 3, 2021).  The Chief Judge largely rejected that request.  Instead, the Standing Order permits the Government to unilaterally edit videos before releasing them, permits access only to a "member of the media with necessary access credentials provided by the government," and expressly prohibits any copying or redistribution:

> Members of the media seeking access to video exhibits submitted to the Court in Capitol Cases may file an application, pursuant to [Local Criminal Rule 57.6], to the presiding judge in the case, or if no judge has been assigned, to the Chief Judge, for determination, and the judge may seek the position of the parties.  Upon grant of such media application, the government shall make the video exhibit available to any member of the media with necessary access credentials provided by the government, unless the order otherwise limits access.  Members of the media provided access to video exhibits in a particular case pursuant to such order may view those exhibits using the "drop box" technical solution proposed by the [United States Attorney's Office for the District of Columbia].  No recording, copying, downloading, retransmitting, or further broadcasting of video exhibits in a particular case is permitted, unless such permission is granted by the presiding judge, who may seek the position of the parties.

Standing Order at 5-6. [1]

## ARGUMENT

Strict application of the First Amendment and the common law are essential in all of the Capitol Cases.  The Court should adhere to these protections and order the immediate release of the Video Exhibits in this case.  Moreover, the Standing Order does not conform to the well-established First Amendment and common law requirements for contemporaneous access to, and the unrestricted right to redistribute, court records.  The Press Coalition therefore also asks this Court to set aside the Standing Order.

## I.      The Court Should Release The Video Exhibits Immediately

The Court should immediately release the Video Exhibits for two independently sufficient reasons.  For one, because the First Amendment right of access applies to the Video Exhibits, they should be released because neither the Government nor the Defendant could possibly show that continued secrecy "is essential to preserve higher values and is narrowly tailored to serve that interest."  *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).  For another, the common law access right also applies to the Video Exhibits, and "[a]lthough [this] right is not absolute, there is a strong presumption in its favor," which cannot be rebutted on the facts of this case.  *See Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017); *United States v. Jackson,* 2021 U.S. Dist. LEXIS 49841, at *13-24 (D.D.C. Mar. 17, 2021) (granting access to video exhibits under common law).

### A.      The Court Should Release The Video Exhibits Under The First Amendment

"The Supreme Court has sketched a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding."  *Dhiab v.*

---

[1] The Standing Order is available at https://www.dcd.uscourts.gov/sites/dcd/files/SO%2021-28_Pandemic_Media%20Access%20to%20Video%20Exs%20in%20Pretrial%20Capitol%20Cases_20210514.pdf.  For this Court's convenience, a copy is attached as Exhibit A to this motion.

*Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).  "First the court must determine whether a qualified First Amendment right of public access exists.  If so, then . . . the record or proceeding may be closed only if closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.* (internal marks and citations omitted).  Here, the right of access clearly attaches to the Video Exhibits, and neither the Defendant nor the Government could possibly carry the weighty burden to overcome that right and justify withholding them from the public.

        1.       **The First Amendment access right attaches to the Video Exhibits**

Courts follow the "experience and logic" test to determine the constitutional right of access to records or a proceeding.  *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 9 (1986).  Under this test, the right of access attaches if "the place and process have historically been open to the press and general public" and if access "plays a significant positive role in the function of the particular process."  *Id*. at 8.  Applying this test here, the constitutional right of access plainly attaches to the Video Exhibits.

It is already well settled that "[t]he First Amendment guarantees a qualified right of public access to criminal proceedings" and related judicial records.  *In re Application of WP Co.*, 201 F. Supp. 3d 109, 117 (D.D.C. 2016) (citing *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 603-04 (1982)).  Moreover, this access right clearly applies to pretrial proceedings as well.  *See Press-Enterprise II*, 478 U.S. at 12-13 (holding that First Amendment right of access applies to preliminary hearing in criminal case and observing that "the absence of a jury, long recognized as an inestimable safeguard against the corrupt or overzealous prosecutor and against

the compliant, biased, or eccentric judge, makes the importance of public access to a preliminary

hearing *even more* significant") (emphasis added and citation and internal marks omitted).[2]

These Video Exhibits were entered as exhibits in support of the Government's request

that Defendant be detained pending trial.  They therefore satisfy the experience and logic test and

fall under the First Amendment right of access.

       **2.**       **The First Amendment access right cannot be overcome on this record**

Because this constitutional right of access applies to the Video Exhibits, the Court should

release them unless keeping them from the public "is essential to preserve higher values and is

narrowly tailored to serve that interest."  *Dhiab*, 852 F.3d at 1102 (Williams, J., concurring).

Specifically, to overcome the constitutional access right, the party seeking closure must

demonstrate that:

1. There is a substantial probability of prejudice to a compelling interest if the right is not limited.  *Press-Enterprise II*, 478 U.S. at 13-14.

2. There is no alternative to a limitation of the access right that will adequately protect against the threatened harm.  *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d 282, 289-90 (D.C. Cir. 1991).

3. Restricting access will effectively protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

4. The restriction on access is narrowly tailored to minimize the harm to the public's access rights.  *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 287.

---

[2] *See also In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) ("The same policy concerns that the Supreme Court identified when it found that the public has a First Amendment right of access to criminal trials . . . operate in pretrial proceedings.  The decision to release on bail an accused who subsequently flees the jurisdiction may effectively end the trial before it has begun; the decision to hold an accused without bail deprives of his liberty a citizen who has not yet been convicted of a crime.  In either case, the bail decision is one of major importance to the administration of justice, and openness will help to assure the public that the decision is properly reached.").

Nothing on the record suggests that keeping the Video Exhibits from the public is essential to preserve higher values.  Moreover, even if the Government or the Defendant could assert a potential risk of harm, and they cannot, they additionally would need to demonstrate that alternative measures cannot adequately redress that risk.  *Id.* at 290; *cf. In re NBC*, 653 F.2d 609, 613-17 (D.C. Cir. 1981) (applying this requirement to common law access test).  At no point in any of the Capitol Cases has the prosecution or defense attempted to make that showing.

Because the First Amendment right of access applies to the Video Exhibits, and there are no findings on the public record demonstrating that continuing to withhold them is essential to preserving any higher values, the Court should grant access to the Video Exhibits immediately.

**B.     The Court Should Release The Video Exhibits Under The Common Law**

The Video Exhibits also should be released pursuant to the common law right of access. "Although [this] right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests." *Metlife*, 865 F.3d at 663.  Like the constitutional right of access, courts apply the common law right of access in a two-stage analysis.  First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access.  *Id.* at 665-67.  Once a court makes the determination that an exhibit or filing is a "judicial record," it applies the six-factor test set out in *United States v. Hubbard* to determine whether the party seeking closure has rebutted the "strong presumption" of public access.  650 F.2d 293, 317-21 (D.C. Cir. 1980).

For precisely the same reasons that Chief Judge Howell articulated in the *Jackson* case, the Video Exhibits are judicial records to which the public has a presumptive right of access under the common law.  *See Jackson*, 2021 U.S. Dist. LEXIS 49841, at *13-14 & n.3 (stating that "[d]ocuments and other materials filed in court intended to influence the court are judicial

records" and clarifying that whether Video Exhibits were "filed on the public docket has no bearing on whether they are judicial records, since they are not in a format amenable to filing on the Court's Case Management/Electronic Filing (CM/ECF) system"). Neither the Defendant nor the Government can possibly rebut the resulting presumption of access under the *Hubbard* test. *See Jackson,* 2021 U.S. Dist. LEXIS 49841, at *13-24.

Moreover, as the D.C. Circuit has recognized, there is a particular "need for public access in those instances where the documents at issue are specifically referred to in the trial judge's public decision.'" *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (internal marks omitted) (quoting *Hubbard*, 650 F.2d at 318). Here, the Court referred to video footage throughout its initial decision to detain Defendant pending trial, and later to grant Defendant's request for release. *See* Dkt. 7, at 3-4; Apr. 14, 2021 Hr'g. Tr. This Court therefore should grant public access to the Video Exhibits in this case pursuant to the common law as well.

## II.    The Court Should Set Aside The Standing Order

In releasing the Video Exhibits in this case, the Court also should set aside the Standing Order, as it does not provide the public with access to the Video Exhibits consistent with the First Amendment and common law. The Standing Order provides that the Court should (1) give the Government no less than 3 days to place the videos on an electronic "drop box"; (2) allow the Government to make the videos accessible only to "credentialed" members of the press; and (3) presumptively prohibit the press from recording, copying, downloading, transmitting, or otherwise publishing the videos to the public. *See* Standing Order at 5-6. Each of these provisions violates the First Amendment right of access. This Court therefore should exercise its authority and set it aside in this case. *See, e.g.*, *United States v. Ray*, 375 F.3d 980, 995 (9th Cir. 2004) (assessing constitutionality of challenged standing order); *United States v. Zingsheim*, 384

F.3d 867, 870 (7th Cir. 2004) (describing standing order as "problematic" and holding that the court can "address the legal status of the order in the course of assessing its application" in a particular case).

### A.    The Standing Order Fails To Provide Contemporaneous Access

The Standing Order first fails by ignoring the principle that the right of access to court records and proceedings is a right of <u>contemporaneous</u> public access.  The Standing Order contemplates that the Government's "drop box" system will not make these Video Exhibits available to the public until "at least 72 hours" after the Court has ordered their release "in light of the possible need for redactions (e.g., personal identifiable information) and uploading of voluminous numbers of exhibits."  *See* Standing Order at 3.  But because the Video Exhibits are subject to the First Amendment and common law right of access, delayed release by default is simply not lawful.  "[T]he presumption of access normally involves a right of *contemporaneous* access."  *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1310 (7th Cir. 1984) (emphasis added); *see also Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020) ("a necessary corollary of the right to access is a right to timely access"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 126 (2d Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of *immediate* access where a right to access is found.") (emphasis added).  The Court should therefore set the Standing Order aside and order the Government to release the Video Exhibits immediately.[3]

---

[3] The Standing Order's failure to provide prompt access is even more apparent now that the Press Coalition has actually submitted applications pursuant to the Standing Order.  The Clerk's Office has informed undersigned counsel that it will handle each access application as a separate miscellaneous action and that it will not open such an action until it receives a filing fee, which it accepts only via check or money order.  In practice, therefore, the process of applying itself holds up access to video exhibits by multiple days on top of the 72-hour delay addressed above.

**B.      The Standing Order Fails To Provide Access To The General Public**

The Standing Order also falls short of the First Amendment by relying on a system for releasing videos – the Government's electronic "drop box" – that fails to provide access to the general public.  In proposing the "drop box" system, the Government informed the Chief Judge that it may be incapable of providing access to "the general public" if requests become "too voluminous."  *See* Gov't Resp. to Court's May 5, 2021 Order, 4 n.2, *In re Press & Public Access to Video Exhibits in the Capitol Riot Cases*, No. 21-mc-46-BAH (D.D.C. May 6, 2021), Dkt. 5.  Rather than require the Government to put forward a better system that provides access to the press and public on equal terms, or accept the Press Coalition's offer to assist,[4] however, the Court provided for narrowly restricting access and leaving the technical issues to the prosecution.  It ordered the Government to "make the video exhibit available to *any member of the media with necessary access credentials provided by the government*."  Standing Order at 6 (emphasis added).

Providing access to the "credentialed" press but not to the general public violates the First Amendment.  As the Second Circuit explained in *Huminski v. Corsones*, which concerned the exclusion of a member of the general public from Vermont state courthouses, "the exclusion of any person undermines right-of-access principles in much the same way, if not to the same extent, as a blanket denial of access does: You cannot foster an appearance of fairness, thereby boosting community trust in the administration of justice, unless *any member of the public* – not

---

[4] The Press Coalition specifically offered that ProPublica, an independent, nonprofit news organization, could "serve as the press representative and take on the responsibility of receiving video exhibits from the Government, coordinating distribution of the videos to other press organizations, and making the videos accessible to the general public."  *See* Mot. to Access Video Exhibits at 8, *In re Press & Public Access to Video Exhibits in the Capitol Riot Cases*, No. 21-mc-46-BAH (D.D.C. May 3, 2021).

only members of the public selected by the courts themselves – may come and bear witness to what happens beyond the courtroom door." 396 F.3d 53, 83-84 (2d Cir. 2004) (emphasis added); *see also Co. Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) ("[T]he right of access is widely shared among the press and the general public alike, such that anyone who seeks and is denied access to judicial records sustains an injury.").

As the First Amendment and common law guarantee access to the Video Exhibits, this Court should not permit the Government to exclude the general public. For this reason as well, the First Amendment and common law require the Court to set aside the Standing Order.

C.     **The Standing Order Presumptively Bars Constitutionally Protected Speech**

Finally, the Standing Order violates the First Amendment by its default provision enjoining the press from recording, copying, downloading, transmitting, or otherwise publishing the videos to the public. *See* Standing Order at 6.[5] In a series of cases over the past 50 years, the Supreme Court has strongly established that when the press "lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Fla. Star v. B.J.F.*, 491 U.S. 524, 533 (1989). As the Court summarized those cases:

> In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), we
> found unconstitutional a civil damages award entered against a
> television station for broadcasting the name of a rape-murder
> victim which the station had obtained from courthouse records. In
> *Oklahoma Publishing Co. v. Oklahoma County District Court*, 430
> U.S. 308 (1977), we found unconstitutional a state court's pretrial
> order enjoining the media from publishing the name or photograph
> of an 11-year-old boy in connection with a juvenile proceeding
> involving that child which reporters had attended. Finally, in

---

[5] This provision also conflicts with the common law, which provides "'a general right to inspect *and copy* public records and documents, including judicial records and documents.'" *Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (Garland, J.) (emphasis added) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

> *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979), we found
> unconstitutional the indictment of two newspapers for violating a
> state statute forbidding newspapers to publish, without written
> approval of the juvenile court, the name of any youth charged as a
> juvenile offender.  The papers had learned about a shooting by
> monitoring a police band radio frequency and had obtained the
> name of the alleged juvenile assailant from witnesses, the police,
> and a local prosecutor.

*Id.* at 530-31.  Here, too, an order permitting journalists to view video exhibits, but forbidding

them from rebroadcasting the videos, violates the First Amendment.  The ban on redistributing

Video Exhibits of paramount public concern does not advance any cognizable interest, let alone

a state interest of the highest order.

 To the contrary, the Government's interest here lies <u>in favor</u> of allowing the press to

rebroadcast the Video Exhibits.  As the Supreme Court recognized in its seminal access ruling,

the press often "function[s] as surrogates for the public" in providing access to judicial

proceedings, and "public understanding of the rule of law" necessarily depends on ensuring that

the press can "report what [they] have seen and heard."  *Richmond Newspapers v. Virginia*, 448

U.S. 555, 572-73 (1980).  Indeed, "[t]o work effectively, it is important that society's criminal

process satisfy the appearance of justice, and *the appearance of justice can best be provided by*

*allowing people to observe it*."  *Id.* at 571-72 (emphasis added).  In granting access to the Video

Exhibits, or any court record for that matter, the presumption <u>favors</u> republication of those

records for the public good.

 Once journalists have access to video released by the Government, a judicial prohibition

against including them in news reports would act as a direct prior restraint on the press.  *See,*

*e.g.*, *United States v. Smith*, 123 F.3d 140, 155 n.17 (3d Cir. 1997) ("Under prior restraint law,

orders prohibiting the media from publishing information already in its possession are strongly

disfavored.").  In this respect as well, the Standing Order exceeds the courts' authority under the

.                                         14

First Amendment.  As with punishing publication after the fact, the Constitution does not permit

a prior restraint absent a state interest of the highest order.  *See Smith*, 443 U.S. at 102 (noting

that a prior restraint "requires the highest form of state interest to sustain its validity" and that

"[p]rior restraints have been accorded the most exacting scrutiny").  No such interest exists here.

    In establishing a presumption against publication, the Standing Order flips the First

Amendment on its head.  For this reason as well, the Court should set aside the Standing Order

and enter its own order granting access to the Video Exhibits in this case.

## **CONCLUSION**

    For the foregoing reasons, the Press Coalition respectfully requests that the Court set

aside the Standing Order and order the immediate and full release the Video Exhibits.

Dated:  June 7, 2021        Respectfully submitted,

                BALLARD SPAHR LLP

                */s/ Charles D. Tobin*
                Charles D. Tobin (#455593)
                Maxwell S. Mishkin (#1031356)
                Lauren Russell (#1697195)
                1909 K Street, NW, 12th Floor
                Washington, DC 20006
                Telephone: (202) 661-2200
                Fax: (202) 661-2299
                tobinc@ballardspahr.com
                mishkinm@ballardspahr.com
                russelll@ballarspahr.com

                *Counsel for the Press Coalition*

# Exhibit A



**FILED**

**MAY 1 4 2021**

<span style="color:red">Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia</span>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

IN RE: MEDIA ACCESS TO VIDEO
EXHIBITS IN PRETRIAL HEARINGS
DURING THE COVID-19 PANDEMIC

Standing Order No. 21-28 (BAH)

Chief Judge Beryl A. Howell

---

### ORDER

In consideration of the following circumstances:

**(A)**    The continued access restrictions to the E. Barrett Prettyman United States Courthouse

and the William B. Bryant Annex (the "Courthouse"), implemented to protect public health

and safety during the ongoing COVID-19 global pandemic, that limit the ability of the media

and the public to obtain in-person access to court proceedings, *see In Re: Modified*

*Restrictions on Access to Courthouse During the Covid-19 Pandemic,* Standing Order No.

21-20 (BAH) (April 2, 2021);

**(B)**    The fact that most civil and criminal proceedings continue to be conducted remotely

using video and/or audio conferencing technology due to the COVID-19 pandemic, *see*

D.D.C. Continuity of Operations Plan ("COOP Plan") (July 15, 2020), App'x 7 (updated

October 27, 2020), as authorized by the Coronavirus Aid, Relief, and Economic Security Act

("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281, Div. B, Title V, § 15002(b) (enacted

March 27, 2020), and *In Re: Fourth Extension of Authorization for Use of Video*

*Teleconferencing and Teleconferencing for Certain Criminal and Juvenile Delinquency*

*Proceedings*, Standing Order No. 21-14 (BAH) (March 16, 2021);

**(C)**    The Court's continued provision of public access call-in lines, which afford members of

the public and the media the opportunity to listen in real-time to court proceedings, and a

1

**21-28**

procedure, in effect as of April 5, 2021, allowing members of the media to view live

videoconference feeds of court proceedings in person at the courthouse, upon advance

request and as ongoing social distancing requirements permit, *see* D.D.C. Notice – Restricted

Access (April 2, 2021)[1];

**(D)**     The significant public and media interest in the numerous criminal cases arising from the

January 6, 2021 violent breach of the United States Capitol (the "Capitol Cases"), for which

the parties are routinely submitting video exhibits to the Court for use in pretrial proceedings,

which video exhibits, unlike other judicial records, are not in a format that can be filed on the

Federal Judiciary's Case Management/Electronic Case Filing (CM/ECF) system and

therefore "must be identified in a Notice of Filing filed with the Court" and are further

required "to be maintained in the possession of the attorney … responsible for the filing" to

be "made available for a party or the Court," D.D.C. LCrR 49(e)(1);

**(E)**     The significant media interest in viewing the video exhibits in Capitol Cases in a timely

manner has generated media requests for access to, including copies of, the video exhibits in

several Capitol Cases, with those requests resolved by the presiding judge on a case-by-case

basis, in accordance with D.D.C. LCrR 57.6, which governs applications for relief in a

criminal case by persons not parties, *see, e.g.*, *United States v. Jackson*, Case No. 21-mj-115

(BAH), 2021 WL 1026127 (D.D.C. Mar. 17, 2021); Order, *United States v. Chansley*, Case

No. 21-cr-3 (RCL) (D.D.C. Mar. 15, 2021), ECF No. 30; *see also* Min. Order (Apr. 28,

2021), *In Re Application for Access to Certain Sealed Video Exhibits*, Case No. 21-mc-34

(TFH) (denying news organizations' motion for access to video exhibits as moot after

government released videos in *United States v. Tanios*, Case No. 21-cr-222-2 (TFH)), and,

---

[1]     The D.D.C. Notice – Restricted Access (April 2, 2021) is available at
https://www.dcd.uscourts.gov/coronavirus-covid-19-response-information-and-announcements.

more informally, at the request of the presiding judge, Court staff has shown such video

exhibits to members of the media at the Courthouse using copies of video exhibits provided

on thumb drives by the United States Attorney's Office for the District of Columbia

("USAO-DC");

(F)      Most recently, on May 3, 2021, a group of fourteen news organizations submitted a letter

to the undersigned Chief Judge acknowledging that "[n]ews organizations thus far have

attempted to address this issue on a case-by-case basis," but citing the problem of "timely

public access … as an administrative concern for the entire District," and therefore seeking a

standing order directing the USAO-DC to release copies of video exhibits submitted for use

in pretrial proceedings in Capitol Cases to a designated media representative for further

reproduction and distribution to news organizations and the public at large, since "[t]hese

videos are judicial records that are presumptively public … ," Pet. to Access Video Exhibits

in the Capitol Riot Cases, at 1, *In Re Press and Public Access to Video Exhibits In the

Capitol Riot Cases ("Video Access Matter")*, Case No. 21-mc-46 (BAH), ECF No. 1;

(G)      Media requests for access to the video exhibits in the Capitol Cases have prompted the

USAO-DC to formulate a plan, first communicated to the undersigned Chief Judge on March

24, 2021, to allow, subject to any limitations imposed by the presiding judge in a particular

case, "interested members of the news media to join a 'drop box' through a platform that

would be populated with the government's exhibits from each hearing and would be

available for download by any member who requested access to the 'drop box,'" with

exhibits posted "at least 72 hours from the time of the proceeding … in light of the possible

need for redactions (e.g., personal identifiable information) and uploading of voluminous

numbers of exhibits," Gov't Resp. to Court's May 3, 2021 Order, at 2, *Video Access*

3

*Matter*, ECF No. 3, which "drop box" option may be "operational," "[u]pon Court order,"

during the week of May 10, 2021, *id.*; and

(H)     While the Office of the Federal Public Defender for the District of Columbia ("FPD")

does not object to a streamlined approach for media to access video exhibits in Capitol Cases

"[t]o the extent that there are no objections to the release of these video exhibits in each

particular case," FPD Resp. to Court's May 4, 2021 Order, at 2, *Video Access Matter*, ECF

No. 6, FPD stresses "considerations in each individual case that may lead counsel to oppose

release of [such] video exhibits," *id.*, pointing to "[t]he fact that these cases are in the

beginning stages," potential taint to jury pools, potential prejudice from use of "a deliberately

chosen or edited clip to support a certain argument or narrative" rather than presentation of

"the whole event," *id.* at 3, such that an individualized "process is necessary to protect the

rights of all parties involved," *id.* at 4, precisely the process contemplated and promoted by

D.D.C. LCrR 57.6;

        It is hereby

**ORDERED** that until further notice during the period of restricted access to the

Courthouse due to the COVID-19 pandemic, members of the media may access pretrial

proceedings in Capitol Cases, and video exhibits used therein that are not under seal, by the

following means, unless the presiding judge in a case determines, after consultation with the

parties, otherwise:

1.   Remote Audio Access to Proceedings: Members of the media may listen to District

     Court proceedings using the designated call-in lines assigned to each Judge.[2]  During

---

[2]       The public access call-in lines assigned to each judge are available at https://www.dcd.uscourts.gov/covid-19-emergency-public-access-teleconference-information-for-judges.

this period until further notice, remote audio access is available for all proceedings, whether held remotely by videoconference, partially remotely, or in person.

2. <u>On-Site Video Access to Proceedings</u>: Upon request made in advance, members of the media are permitted, as space and technology infrastructure allows, to view a live video stream of District Court proceedings from a courtroom or dedicated Media Room within the Courthouse.[3]  On-site video feed access is available for remote, partially remote, and in-person proceedings.  Recording, broadcasting and/or retransmitting audio or video feeds of court proceedings remains strictly prohibited, *see In Re Public and Media Access to Judicial Proceedings During COVID-19 Pandemic*, Standing Order No. 20-20 (BAH) (April 8, 2020), and while in the Courthouse, members of the media may only use electronic devices for contemporaneous reporting during a proceeding from a dedicated Media Room, *id.*

3. <u>Access to In-person Proceedings</u>: As space permits, consistent with social distancing protocols necessary to protect the health and safety of all participants, members of the media may be permitted to view in-person proceedings from the courtroom gallery. The presiding judge will determine whether a request to view a particular in-person proceeding from inside the courtroom where the proceeding is held will be granted.

4. <u>Additional Access to Video Exhibits Submitted in Capitol Cases</u>: Members of the media seeking access to video exhibits submitted to the Court in Capitol Cases may file an application, pursuant to D.D.C. LCrR 57.6, to the presiding judge in the case, or if no judge has been assigned, to the Chief Judge, for determination, and the judge may seek the position of the parties.  Upon grant of such media application, the

---

[3] Media requests to view a video stream of proceedings may be submitted here: https://www.dcd.uscourts.gov/contact.

government shall make the video exhibit available to any member of the media with

necessary access credentials provided by the government, unless the order otherwise

limits access.  Members of the media provided access to video exhibits in a particular

case pursuant to such order may view those exhibits using the "drop box" technical

solution proposed by the USAO-DC.  No recording, copying, downloading,

retransmitting or further broadcasting of video exhibits in a particular case is

permitted, unless such permission is granted by the presiding judge, who may seek

the position of the parties; and it is further

   **ORDERED** that the USAO-DC is directed to implement, by May 17, 2021, the proposed

"drop box" technical solution to make available for viewing the government's video exhibits

submitted to the Court in Capitol Cases, including identifying and segregating by case name and

number such video exhibits and posting such video exhibits promptly from the time of the

proceedings for which the exhibit is submitted, in compliance with any order issued by the

presiding judge in the case.

   **SO ORDERED.**

   Date: May 14, 2021

BERYL A. HOWELL
Chief Judge

6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE PRESS COALITION'S MOTION FOR
ACCESS TO VIDEO EXHIBITS AND TO
SET ASIDE STANDING ORDER NO. 21-28

Case No.

**[PROPOSED] ORDER**

Upon consideration of the Press Coalition's Motion for Access to Video Exhibits and to

Set Aside Standing Order No. 21-28, any response(s) thereto, and the entire record herein, it is

hereby **ORDERED** that:

1.      The Motion to Set Aside Standing Order No. 21-28 is GRANTED, and the

Standing Order shall not apply in this action;

2.      The Motion for Access to Video Exhibits is GRANTED; and

3.      The Clerk of the Court shall release the Video Exhibits to the Press Coalition

immediately.

**SO ORDERED.**

_____
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE PRESS COALITION'S MOTION FOR ACCESS TO VIDEO EXHIBITS AND TO SET ASIDE STANDING ORDER NO. 21-28 | Case No. |

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Civil Procedure 7.1 and Local Civil Rule 26.1, undersigned counsel for Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a the Washington Post hereby certify that:

**Cable News Network, Inc.**, a Delaware corporation, is an indirect wholly-owned subsidiary of AT&T Inc., a publicly traded corporation.  AT&T Inc. has no parent company and, to the best of CNN's knowledge, no publicly held company owns 10% or more of AT&T's stock.

**American Broadcasting Companies, Inc. d/b/a ABC News** is an indirect, wholly-owned subsidiary of The Walt Disney Company, a publicly traded corporation.

**The Associated Press** is a news cooperative incorporated under the Not-for-Profit Corporation Law of New York and has no parents, subsidiaries or affiliates that have any outstanding securities issued to the public.

**Buzzfeed Inc. d/b/a BuzzFeed News** is a privately owned corporation.  Ten percent or more of its stock is owned by NBCUniversal Media LLC, a wholly-owned indirect subsidiary of Comcast Corporation, which is publicly traded.  No other publicly held company owns 10% or more of its stock.

**CBS Broadcasting, Inc.** is an indirect, wholly owned subsidiary of ViacomCBS Inc. ViacomCBS Inc. is a publicly traded company.  National Amusements, Inc., a privately held company, beneficially owns the majority of the Class A voting stock of ViacomCBS Inc. ViacomCBS Inc. is not aware of any publicly held entity owning 10% or more of its total common stock, i.e., Class A and Class B on a combined basis.

**Dow Jones & Company, Inc.** ("Dow Jones"), publisher of the Wall Street Journal, is an indirect subsidiary of News Corporation, a publicly held company.  Ruby Newco, LLC, an indirect subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones.  News Preferred Holdings, Inc., a subsidiary of News Corporation, is the direct parent of Ruby Newco, LLC.  No publicly traded corporation currently owns 10% or more of the stock of Dow Jones.

**The E.W. Scripps Company** is a publicly traded company with no parent company.  No individual stockholder owns more than 10% of its stock.

**Gannett Co., Inc.** is a publicly traded company (NYSE: GCI).  BlackRock Inc. and Vanguard Group, Inc. are entities with more than a 10% interest in Gannett Co., Inc.

**Gray Media Group, Inc.** is held entirely by Gray Television, Inc., a publicly held corporation.  No entity holds 10% or more of the equity in Gray Television, Inc.

**Los Angeles Times Communications LLC** is a wholly-owned subsidiary of NantMedia Holdings, LLC, which is a privately held company. No company with a 10% or greater ownership share in NantMedia Holdings, LLC is publicly traded.

**National Public Radio, Inc.**, a non-governmental corporate party, has no parent company and issues no stock.

**NBCUniversal Media, LLC d/b/a NBC News** is indirectly owned by Comcast Corporation, which is publicly held.  No other publicly held corporation owns 10% or more of the stock of NBCUniversal Media, LLC.

**The New York Times Company**, a publicly traded company, has no parent company and no publicly held corporation owns 10% or more of its stock.

**Pro Publica, Inc.**, a non-profit corporation, has no parent corporation and has no stock.

**Tegna, Inc.** has no parent corporation.  No publicly held corporation owns 10% or more of Tegna, Inc.'s stock.

**WP Company LLC d/b/a The Washington Post** is a wholly owned subsidiary of Nash Holdings LLC, which is privately held and does not have any outstanding securities in the hands of the public.

These representations are made in order that judges of this Court may determine the need for recusal.

Dated:  June 7, 2021                    Respectfully submitted,

                                        BALLARD SPAHR LLP

                                        /s/ *Charles D. Tobin*
                                        Charles D. Tobin (#455593)
                                        Maxwell S. Mishkin (#1031356)
                                        Lauren Russell (#1697195)
                                        1909 K Street, NW, 12th Floor
                                        Washington, DC 20006

Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*